# CHARLESTON

### TWENTIETH STREET BANK V. JACOBS.

Submitted June 9, 1914.   Decided June 16, 1914.

1. GAMING—*Gambling   Contracts—Validity—Negotiable   Instrument   Law.*

    Chapter 81, Acts of 1907, ch. 98 A of the Code, known as the Negotiable Instruments Law, does not by implication or otherwise, repeal, limit or qualify, in any degree or respect, sec. 1 of ch. 97 of the Code, declaring void what are commonly known as gambling contracts.   (p. 526).

2. BILLS AND NOTES—*Validity—Illegal Consideration.*

    Negotiable paper the consideration whereof is money lost or bet in gaming is void in the hands of the holder, even though he took it for value and without notice of the character of the consideration. (p. 526).

3. STATUTES—*Construction—Legislative Intent.*

    In determining the meaning of a statute, it will be presumed, in the absence of words therein, specifically indicating the contrary, that the legislature did not intend to innovate upon, unsettle, alter, violate, repeal or limit another general statute or statutory system, the entire subject matter of which is not directly nor necessarily involved in the act.   (p. 527).

4. SAME—*Construction—Consumption.*

    The legislature is presumed to know the rules and principles of construction adopted by the courts. (p. 527).

5. BILLS AND NOTES—*Void Instruments—Rights to Enforce.*

    While a merely illegal consideration in a negotiable instrument does not invalidate it in the hands of a holder in due course, a paper negotiable in form, but declared void by a statute, is not enforcible at the instance of anybody. (p. 527).

Error to Circuit Court, Cabell County.

Action by the Twentieth Street Bank against J. B. Jacobs. Judgment for plaintiff, and defendant brings error.

*Reversed and rendered.*

*C. S. Welch* and *D. B. Daugherty,* for plaintiff in error.

*Marcum & Shepherd,* for defendant in error.

POFFENBARGER, JUDGE:

Assuming sec. 1 of ch. 97 of the Code, declaring void every contract the consideration of which is money, property or other thing won or bet at any game, sport, pastime, or wager, or money lent or advanced at the time of any gaming, betting or wagering, to be used therein, to have been partially repealed by implication, by the passage of the negotiable instruments law, ch. 81, Acts, 1907, ch. 98A of the Code, the Circuit Court of Cabell County, in an action for the recovery of the amount of two checks, on an agreed statement of facts, admitting the consideration thereof to have been money lost in gambling, rendered a judgment for the amount of the checks against the drawer and in favor of the assignee thereof, who had taken them without notice of the character of the consideration.

The provision of the negotiable instruments law to which such effect is accorded by the judgment is sec. 57, saying: "A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves and may enforce payment of the instrument for the full amount thereof against all the parties liable thereon." In connection therewith, sec. 55 relating to defectiveness of the title of a person negotiating paper, sec. 196, making the law merchant govern in

all cases not provided for by the act, and sec. 197, repealing sec. 9 of chap. 99 of the Code and all acts and parts of acts inconsistent with the new law to that extent, are relied upon. By another section a holder in due course is defined.

Sec. 55 makes illegality of consideration a mere defect and sec. 57 says a holder in due course takes the instrument free from any defect of title of prior parties. A holder in due course is one who has taken an instrument complete and regular on its face before it was overdue, in good faith and for value without notice of its previous dishonor, and without notice of any infirmity in the instrument or defect in the title of the person negotiating it.

The effect claimed for these general provisions cannot be accorded them consistently with the rules and principles of construction of statutes. The legislature was dealing, at the time of the passage of the act and in the passage thereof, with the matter of negotiability of paper which the law allowed men to put on the market and the courts to enforce. It was not then considering the subject of gaming to which it had previously given its careful attention, nor acting upon it. The act does not mention it, nor did any provision thereof suggest it to the legislative mind. Any presumption that any member of the legislature, while considering or acting upon the bill, had the slightest suggestion or intimation from any of its terms, that it would, in any sense or to any degree, legalize gambling debts, would be a most violent one. Nobody in reading the act, without having had the subject of gaming debts, fixed in his mind, at the time, by some means other than its terms, would likely discover the alleged opening for the use of paper expressly declared by law to be absolutely void in the hands of any and all persons, and appreciate at the same time the far-reaching effect of it. The partial legalization contended for would virtually destroy the previous statute, for every paper negotiable in form, taken for money lost or bet in gambling, would be made valid by the mere endorsement and delivery thereof to some person ignorant of the character of the consideration. Of course, the legislature never saw nor intended any such result.

But, if the suggestion of such a possibility did enter the legislative mind any time, there is a presumption in law that

the law making body relied upon a well settled rule of construction, adopted by the courts, for protection against it. That rule limits the operation of a statute to its subject matter and general purpose, in the absence of a specific expression of intent and purpose to extend its operation to other subjects. *Reeves* v. *Ross* 62 W. Va. 7; *Coal & Coke Ry. Co.* v. *Conley and Avis,* 67 W. Va. 129; *Brown* v. *Gates,* 15 W. Va. 131; *Railroad Co.* v. *Alexandria,* 17 Gratt. 176; *Grubb's Adm'r* v. *Sult,* 32 Gratt. 203; *Cope* v. *Doherty,* DeG. & J. 614; *Hawkins* v. *Gathercole,* 6 Dels. M. G., 1. Upon an exhaustive review of the subject, this court has declared the following rule: "In determining the meaning of a statute, it will be presumed, in the absence of words therein, specifically indicating the contrary, that the legislature did not intend to innovate upon, unsettle, disregard, alter or violate, (1) the common law; (2) a general statute or system of statutory provisions, the entire subject matter of which is not directly or necessarily involved in the act; (3) a right or exception based upon settled public policy; (4) the constitution of the state; nor (5) the constitution of the United States." *Coal & Coke Ry. Co.* v. *Conley & Avis,* cited.

This rule old as English jurisprudence and hoary with age is deemed to have been within the knowledge of the legislature, while acting upon the bill converted into law by the passage of ch. 81 of the Acts of 1907. *State* v. *Harden,* 62 W. Va. 313; *Brown* v. *Turner,* 174 Mass. 150; 36 Cyc. 1135. "The legislature is presumed to know the principles of statutory construction." Lewis' Suth. Stat. Con., sec. 499.

The decisions of courts of other states, in which this rule has been overlooked or ignored in the construction of the statute, *Schlesinger* v. *Gilhooly,* 189 N. Y. 1; *Schlesinger* v. *Lehmaier,* 191 N. Y. 69; *Bank* v. *Pick,* 99 N. W. 63; *Samson* v. *Ward,* 132 N. W. 629; *Arnd* v. *Sjoblom,* 111 N. W. 666; and *Wirt* v. *Stubblefield,* 17 App. D. C. 283, do not commend themselves to us and we decline to follow them. The two Kentucky cases relied upon by the plaintiff in error, *Alexander* v. *Hazerigg,* 123 Ky. 677 and *Lawson* v. *Bank,* 102 S. W. 324, embody the correct interpretation of the statute, in our opinion.

Uniformity of construction of the new law is desirable, but

it can be attained only by adherence to fundamental and cardinal rules of interpretation. Courts cannot be expected to lay them out of view for the sake of mere conformity with decisions that clearly violate them.

The judgment complained of will be reversed and judgment entered here for the defendant.

*Reversed and rendered.*