529 S.E.2d 110

**EXPEDITED TRANSPORTATION SYSTEMS, INC., Petitioner Below, Appellee,**

v.

**William VIEWEG, Commissioner, West Virginia Bureau of Employment Programs, Workers' Compensation Division, Respondent Below, Appellant.**

No. 26635.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 12, 2000.

Decided Jan. 28, 2000.

Riley J. Romeo, Supervising Attorney, Bureau of Employment Programs, Legal Services Division—Litigation Unit, Charleston, West Virginia, Attorney for the Appellant.

Stephen P. Hoyer, Hoyer, Hoyer, Smith & Miesner, Charleston, West Virginia, Attorney for the Appellee.

**1.** Mr. White was never an owner or officer of TTP. He was employed in the areas of sales, safety and operations. Mr. White had also been employed by TTP's predecessor Mountain State

DAVIS, Justice:

Appellant, the West Virginia Bureau of Employment Programs, Workers' Compensation Division (hereinafter "the Division"), appeals an order of the Circuit Court of Kanawha County that reversed a final order rendered by the Division. The Division's order found that the appellee, Expedited Transportation Systems, Inc. (hereinafter "Expedited"), was a successor employer and was, therefore, liable for its predecessor's delinquent Workers' Compensation Premiums pursuant to W. Va.Code § 23-2-14 (1995) (Repl.Vol.1998). We conclude that, because the Division failed to follow mandatory procedures set forth in W. Va.Code § 23-2-14(f) and W. Va.Code § 23-2-15 (1995) (Repl.Vol. 1998), the administrative procedure was not exhausted and the circuit court was without jurisdiction to consider an appeal of this case. Consequently, we reverse the order of the circuit court and remand this case for additional proceedings in compliance with this opinion and the relevant statutes.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The facts presented on appeal are essentially undisputed. Trucks, Trains and Planes, Inc., d/b/a/ C.C. Carriers (hereinafter "TTP"), is a multi-state company headquartered in Florida. TTP operated an over-the-road trucking company in West Virginia from July, 1994, to December, 1996. Although TTP closed its West Virginia division in December of 1996, it nevertheless remained in business in other jurisdictions. At the time it ended its West Virginia operation, TTP owed approximately $215,000 in unpaid West Virginia Workers' Compensation premiums.

On January 2, 1997, a former TTP employee, Mr. Michael L. White (hereinafter "Mr. White"),[1] incorporated Expedited, petitioner below and appellee herein. Expedited is also

Logistics, d/b/a C.C. Carriers (hereinafter "Mountain State"). Mountain State operated from Barboursville, West Virginia.

an over-the-road trucking company.[2] Mr. White is the president and sole shareholder of Expedited. Expedited leased and occupied the same location formerly occupied by TTP. However, that property had been leased to TTP by P & M Enterprises, a limited partnership formed by Mr. White and his ex-wife.[3] In addition, at the time Expedited was formed, it leased from TTP approximately thirty percent of TTP's fleet, hired fifty percent of TTP's office personnel and twenty-five percent of TTP's truck drivers, and began providing services to approximately fifty percent of TTP's client base from which thirty percent of TTP's revenue base had been derived.[4] With the exception of lease payments for the use of TTP's fleet, Expedited paid no consideration to TTP.

While processing Expedited's initial application for Workers' Compensation coverage, the Division, respondent below and appellant herein, determined that Expedited was a successor employer to TTP pursuant to W. Va. Code § 23–2–14(b)[5] (1995) (Repl.Vol.1998)[6] and, as such, was liable for TTP's outstanding premium debt. In response to the Division's decision, Expedited petitioned for an administrative hearing on the issue of successor liability pursuant to W. Va.Code § 23–2–17 (1993) (Repl.Vol.1998).[7] A hearing was

2. Prior to the closing of TTP's West Virginia office, Mr. White circulated a memorandum to the other TTP employees stating, in part:

After considerable thought and discussion I have decided to substantially change our relationship with C.C. Carriers and Trucks, Trains and Plains (TTP). Effective within the next 10 days we will begin operations as Expedited Transportation Systems Inc. (ETS). I will serve as President of the company and own 100 per cent of the stock.

ETS will maintain the same customer base. You will continue to operate the same equipment. However, as you have probably already noticed, there will be some changes in administrative staff. The decision to reduce TTP's role will result in greater autonomy for ETS and eliminate many of the problems that have plagued us since Barboursville.

3. Mr. White and his ex-wife have owned the property since 1984.

4. The record does not clearly establish whether these percentages represent a portion of TTP's total operations or only its West Virginia Division, nor does it indicate what portion of TTP's total assets for these categories was located in West Virginia. Without these details, we find the percentages set forth in the record are essentially meaningless.

5. W. Va.Code § 23–2–14 was amended in 1999. However, the changes are unrelated to the issues addressed in this opinion and our conclusions apply with equal force to the newer version of the statute.

6. W. Va.Code § 23–2–14(b) (1995) (Repl.Vol. 1998) states:

Notwithstanding any provisions of section five-a of this article to the contrary, in the event that a new employer acquires by sale or other transfer or assumes all or substantially all of a predecessor employer's assets, then:

(1) Any liens for payments owed to the division for premium taxes, premium deposits, interest, penalty premium rate or other payments owed to the division by the predecessor employer shall be extended to the successor employer;

(2) Any liens held by the division against the predecessor employer's property shall be extended to all of the assets of the successor employer;

(3) Liens acquired in the manner described in subdivisions (1) and (2) of this subsection shall be enforceable by the division to the same extent as provided for the enforcement of liens against the predecessor employer in section five-a of this article; and

(4) Unless all amounts owed by the predecessor employer are paid prior to or at the sale or other transfer, prior defaults by a predecessor employer shall accrue to the new employer for purposes of determining whether the new employer is subject to the penalty premium rate provisions of subdivision (1), subsection (f), section five [§ 23–2–5(f)(1)] of this article. Assets are defined in § 23–2–14(e):

As used in this article, the term "assets" means all property of whatever type in which the employer has an interest including, but not limited to, good will, business assets, customers, clients, contracts, access to leases such as the right to sublease, assignment of contracts for the sale of products, operations, stock of goods or inventory, accounts receivable, equipment or transfer of substantially all of its employees.

7. W. Va.Code § 23–2–17 (1993) (Repl.Vol.1998) states:

Notwithstanding any provision in this chapter to the contrary and notwithstanding any provision in section five [§ 29A–5–5], article five, chapter twenty-nine-a of this code to the contrary, in any situation where an employer objects to a decision or action of the commissioner made under the provisions of this article, then such employer shall be entitled to file a petition demanding a hearing upon such decision or action which petition must be filed

subsequently held and the presiding hearing examiner rendered a recommended decision concluding, in relevant part, that Expedited was a successor employer of TTP and was, therefore, liable for TTP's debt. Unlike the Division's initial determination of successor liability, which was based on W. Va.Code § 23–2–14(b), the hearing examiner based his determination upon a presumption contained in W. Va.Code § 23–2–14(f), which states:

> The transfer of any assets of the employer shall be presumed to be a transfer of all or substantially all of the assets if the transfer affects the employer's capacity to do business. The presumption can be overcome upon petition presented and an administrative hearing in accordance with section fifteen [§ 23–2–15] of this article and in consideration of the factors thereunder.

As permitted by W. Va.Code § 23–2–14(f), Expedited requested an administrative hearing pursuant to W. Va.Code § 23–2–15 (1995) (1998).[8] However, the Division failed to respond to the request and no such hearing was held.[9] In addition, Expedited objected to the hearing examiner's recommended decision, but the Division nevertheless adopted the decision in full in a final order. Thereafter, Expedited appealed that final order to the Circuit Court of Kanawha County pursuant to W. Va.Code § 29A–5–4 (1998) (Repl. Vol.1998).[10] In a subsequent order entered on February 16, 1999, the circuit court concluded that "the decision rendered by [the Division] was reached by misinterpreting **West Virginia Code § 23–2–14(b) & (f)** and said decision was clearly wrong under the reliable, probative, and substantive evidence of the whole record under **West Virginia Code § 29A–5–4(g).**" The court explained:

> While **West Virginia Code § 23–2–14(b)** holds that successor liability may be found when all or substantially all of a predecessor corporation's assets are acquired by sale, assumption, or other form of transfer, this presumption can be overcome under **West Virginia Code § 23–2–14(f) by a proper petition and adequate rebuttal.** Accordingly, because the current president of Expedited Transportation Systems Inc., Michael L. White, established that he was not an officer of [TTP],

within thirty days of the employer's receipt of notice of the disputed commissioner's decision or action or, in the absence of such receipt, within sixty days of the date of the commissioner's making such disputed decision or taking such disputed action, such time limitations being hereby declared to be a condition of the right to litigate such decision or action and hence jurisdictional.

The employer's petition shall clearly identify the decision or action disputed and the bases upon which the employer disputes the decision or action. Upon receipt of such a petition, the commissioner shall schedule a hearing which shall be conducted in accordance with the provisions of article five [§ 29A–5–1 et seq.], chapter twenty-nine-a of this code. An appeal from a final decision of the commissioner shall be taken in accord with the provisions of articles five and six [§ 29A–5–1 et seq. and § 29A–6–1 et seq.] of said chapter: Provided, That all such appeals shall be taken to the circuit court of Kanawha county.

**8.** W. Va.Code § 23–2–15 was amended in 1999. However, the changes are unrelated to the issues addressed in this opinion and our conclusions apply with equal force to the newer version of the statute.

**9.** This evidence regarding the W. Va.Code § 23–2–15 hearing was revealed by counsel for Expedited and confirmed by counsel for the Division during oral argument before this Court.

**10.** The relevant portions of W. Va.Code § 29A–5–4 (1998) (Repl.Vol.1998) state:

> (a) Any party adversely affected by a final order or decision in a contested case is entitled to judicial review thereof under this chapter, but nothing in this chapter shall be deemed to prevent other means of review, redress or relief provided by law.
>
> . . . .
>
> (g) The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedures; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
>
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

had no corporate rights, obligations, or ownership interest in [TTP], and did not acquire a quantity of assets from [TTP] that would constitute all or even substantially all of its assets as required by **West Virginia Code § 23–2–14(b)**, the Court hereby **REVERSES** the Final Order rendered by the [Division]. The Court further finds that Petitioner, Expedited Transportation Systems Inc., is not liable as a successor corporation for the unpaid Workers' Compensation premiums of [TTP].

It is from this order that the Division now appeals.[11]

## II.

### STANDARD OF REVIEW

■ In the case *sub judice*, the circuit court reversed the Division's conclusion that Expedited was a successor employer to TTP. We have previously explained that "[i]n cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. pt. 2, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). In this case, however, the failure of the Division to grant, or even acknowledge, Expedited's request for a hearing pursuant to W. Va.Code §§ 23–2–14(f) and 23–2–15, presents a procedural twist with jurisdictional connotations. Consequently, before reaching the substantive issues raised, we must first contemplate whether the circuit court had jurisdiction to consider the appeal of this matter.[12] *Cf. State v. Salmons*, 203 W.Va. 561, 568–69, 509 S.E.2d 842, 849–50 (1998) ("'We are duty bound to take up [this] issue sua sponte, because it implicates the scope of our appellate jurisdiction.' *Province v. Province*, 196 W.Va. 473, 478 n. 11, 473 S.E.2d 894, 899 n. 11 (1996)."). To ascertain whether the circuit court had jurisdiction over the appeal of

this action, we will review the procedural course it took and consider whether that course comported with the applicable law.

## III.

### DISCUSSION

■ The procedural irregularity giving rise to our jurisdictional concern in this instance is the failure of the Division to acknowledge Expedited's request for a hearing pursuant to W. Va.Code §§ 23–2–14(f) and 23–2–15. During oral argument before this Court, Expedited asserted, and the Division confirmed, that Expedited requested a hearing under the aforementioned Code sections and received no response from the Division. The question raised by this course of events is whether the Division erred in failing to grant Expedited's request and, if so, whether the error affected the jurisdiction of the circuit court to consider the case on appeal. To answer this question, we must look to the relevant statutes while bearing in mind that " '[t]he primary object in construing a statute is to ascertain and give effect to the intent of the legislature.' Syllabus Point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. pt. 2, *Anderson v. Wood*, 204 W.Va. 558, 514 S.E.2d 408 (1999). Furthermore, " '[i]n ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation.' *State ex rel. Morgan v. Trent*, 195 W.Va. 257, 263, 465 S.E.2d 257, 263 (1995) (citations omitted)." *Anderson* at 561, 514 S.E.2d at 411.

Our duty to ascertain the legislative intent behind W. Va.Code § 23–2–14 is made effortless in this instance by virtue of the fact that the Legislature expressly stated its intent in W. Va.Code § 23–2–14(g), which states:

The foregoing provisions are expressly intended to impose upon such successor employers the duty of obtaining from the

---

**11.** On February 18, 1999, Expedited filed a Chapter 11 bankruptcy petition. During oral argument before this Court, the parties represented that the bankruptcy court had lifted the automatic stay for final determination of this appeal.

**12.** Ultimately, if the circuit court lacked jurisdiction to consider an appeal of this matter, then this Court would be similarly without such jurisdiction.

division or predecessor employer, prior to the date of such acquisition, a valid "certificate of good standing to transfer a business or business assets" to verify that the predecessor employer's account with the division is in good standing.

Having observed this legislative intent, we proceed to consider the specific provisions in question and to determine how they give effect to this intent.

■ The first statutory provision in question, W. Va.Code § 23–2–14(f), provides for a presumption that a company has obtained all or substantially all of a predecessor company's assets, which is the standard for being a successor employer under W. Va.Code § 23–2–14(b). In addition, W. Va.Code § 23–2–14(f) sets forth a method for overcoming that presumption. In this regard, § 23–2–14(f) states "[t]he presumption can be overcome upon petition presented *and* an administrative hearing in accordance with section fifteen [§ 23–2–15] of this article *and* in consideration of the factors thereunder." (Emphasis added). By using the conjunctive "and," the Legislature has indicated that to rebut the presumption, there must be a petition presented, an administrative hearing under W. Va.Code § 23–2–15, and consideration of the factors outlined in that section of the Code. *See Ooten v. Faerber,* 181 W.Va. 592, 597, 383 S.E.2d 774, 779 (1989) (" '[a]nd' is a conjunction connecting words or phrases, expressing the idea that the latter is to be added to or taken along with the first; in its conjunctive sense the word 'and' is used to conjoin words, clauses or sentences, expressing the relation of addition or connection, and signifying that something is to follow in addition to that which proceeds, and its use implies that the connected elements must be grammatically coordinate, as where the elements preceding and succeeding the word 'and' refer to the same subject matter.") (citing *Black's Law Dictionary* 79 (5th ed.1979)).

Although the statute requires a petition, an administrative hearing and consideration of certain specific criteria to overcome the presumption, obviously the procedure must be initiated by the filing of a petition by an employer who has been deemed a successor employer by virtue of the presumption. In this case, Expedited filed such a petition. Thus, the question to be resolved is whether the Division has any discretion to deny the petition once it has been filed.

■ W. Va.Code § 23–2–14(f) does not expressly state whether the Division has discretion to deny a petition for an administrative hearing to overcome the presumption. To answer this question, then, we look to W. Va.Code § 23–2–15, which must be read *in pari materia* with § 23–2–14(f):

> " 'Statutes in pari materia, must be construed together and the legislative intention, as gathered from the whole of the enactments, must be given effect.' Point 3., Syllabus, *State ex rel. Graney v. Sims,* 144 W.Va. 72[, 105 S.E.2d 886 (1958) ]. Syl. pt. 1, *State ex rel. Slatton v. Boles,* 147 W.Va. 674, 130 S.E.2d 192 (1963)." Syl. pt. 1, *Transamerica Com. Fin. v. Blueville Bank,* 190 W.Va. 474, 438 S.E.2d 817 (1993).

Syl. pt. 2, *Beckley v. Kirk,* 193 W.Va. 258, 455 S.E.2d 817 (1995). *See also Bowers v. Wurzburg,* 205 W.Va. 450, 463, 519 S.E.2d 148, 161 (1999) ("Although a particular body of legislation may not define a particular term contained therein, statutes relating to the same subject matter must be construed *in pari materia,* and not inconsistently with one another.) *See* Syl. pt. 3, *Boley v. Miller,* 187 W.Va. 242, 418 S.E.2d 352 (1992) (" "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syllabus Point 3, *Smith v. State Workmen's Compensation Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975).' " (Additional citation omitted)).

■ With regard to the Division's duty to grant a requested hearing, W. Va.Code § 23–2–15(a) states in relevant part:

> At any time prior to or following the acquisition described in subsection (a), (b) or (c), section fourteen [§ 23–2–14(a), (b) or (c) ] of this article, the buyer or other recipient may file a certified petition with the division requesting that the division waive the payment by the buyer or other recipient of premiums, premium deposits,

interest and imposition of the modified rate of premiums attributable to the predecessor employer or other penalty, or any combination thereof. *The division shall review the petition by considering the seven factors set forth below:*

. . . .

*Unless requested by a party or by the division, no hearing need be held on the petition . . . .*

(emphasis added). This provision is phrased in plain language.

" ' "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951).' Syllabus point 1, *State v. Jarvis,* 199 W.Va. 635, 487 S.E.2d 293 (1997)." Syllabus point 3, *Albright v. White,* 202 W.Va. 292, 503 S.E.2d 860 (1998).

Syl. pt. 2, *Henry v. Benyo,* 203 W.Va. 172, 506 S.E.2d 615 (1998). Moreover, it utilizes the mandatory word "shall" in directing the Division to consider a petition with regard to the seven factors set forth therein.

" ' " '[T]he word "shall," in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation.' Point 2 Syllabus, *Terry v. Sencindiver,* 153 W.Va. 651[, 171 S.E.2d 480 (1969) ]." Syl. pt. 3, *Bounds v. State Workmen's Compensation Comm'r,* 153 W.Va. 670, 172 S.E.2d 379 (1970).' Syl. pt. 9, *State ex rel. Goff v. Merrifield,* 191 W.Va. 473, 446 S.E.2d 695 (1994) (citation alteration in original)." *State ex rel. Clark v. Blue Cross Blue Shield of West Virginia, Inc.,* 203 W.Va. 690, 702, 510 S.E.2d 764, 776 (1998).

*Jan–Care Ambulance Serv., Inc. v. Public Serv. Comm'n of West Virginia,* 206 W.Va. 183, 195, 522 S.E.2d 912, 923 (1999). In addition, the language "[u]nless requested by a party or by the division, no hearing need be held on the petition" plainly compels a hearing when one is requested by a party or the Division. Finally, the fact that a § 23–2–15 hearing is the only method for overcoming the § 23–2–14(f) presumption further persuades us that the Division is without discretion to deny a hearing once it has been

requested. It is the "duty of this Court to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, *unjust* or unreasonable results." *State v. Kerns,* 183 W.Va. 130, 135, 394 S.E.2d 532, 537 (1990) (emphasis added).

These various provisions further the Legislature's expressed purpose of encouraging potential successor employers to verify that a potential predecessor employer's Workers' Compensation account is in good standing by setting forth the criteria by which an employer who fails to do so will be held responsible for the unpaid Workers' Compensation debts of a predecessor employer who is not in good standing. This scheme also furthers justice by providing a mechanism by which an employer who has been deemed a successor employer by virtue of the § 23–2–14(f) presumption may be relieved of its predecessor's debt.

■ For these reasons, we hold that when the presumption permitted by W. Va.Code § 23–2–14(f) (1995) (Repl.Vol.1998) is used to determine that an employer is a successor employer for the purposes of W. Va.Code § 23–2–14(b) (1995) (Repl.Vol.1998), and that employer subsequently follows the procedure outlined in W. Va.Code § 23–2–14(f) by requesting a hearing pursuant to W. Va.Code § 23–2–15 (1995) (Repl.Vol.1998) to overcome the presumption, the Workers' Compensation Division must grant the employer's request and conduct such a hearing.

In addition to mandating that a hearing be held, W. Va.Code § 23–2–15 sets forth numerous procedural requirements for the hearing, the issuance of the Division's final determination, and review of that determination:

(a) At any time prior to or following the acquisition described in subsection (a), (b) or (c), section fourteen [§ 23–2–14(a), (b) or (c) ] of this article, the buyer or other recipient may file a certified petition with the division requesting that the division waive the payment by the buyer or other recipient of premiums, premium deposits, interest and imposition of the modified rate of premiums attributable to the predecessor employer or other penalty, or any combination thereof. *The division shall review the petition by considering the seven factors set forth below:*

*(1) The exact nature of the default;*

*(2) The amount owed to the division;*

*(3) The solvency of the fund;*

*(4) The financial condition of the buyer or other recipient;*

*(5) The equities exhibited towards the fund by the buyer or other recipient during the acquisition process;*

*(6) The potential economic impact upon the state and the specific geographic area in which the buyer or other recipient is to be or is located, if the acquisition were not to occur; and*

*(7) Whether the assets are purchased in an arms-length transaction.*

Unless requested by a party or by the division, no hearing need be held on the petition. However, *any decision made by the division on the petition shall be in writing and shall include appropriate findings of fact and conclusions of law.* Such decision shall be effective ten days following notice to the public of the decision unless an objection is filed in the manner herein provided. Such notice shall be given by the division's filing with the secretary of state, for publication in the state register, of a notice of the decision. At the time of filing the notice of its decision, the division shall also file with the secretary of state a true copy of the decision. The publication shall include a statement advising that any person objecting to the decision must file, within ten days after publication of the notice, a verified response with the division setting forth the objection and the basis therefor. If any such objection is filed, the division shall hold an administrative hearing, conducted pursuant to article five [§ 29A–5–1 et seq.], chapter twenty-nine-a of this code, within fifteen days of receiving the response unless the buyer or other recipient consents to a later hearing. Nothing in this subsection shall be construed to be applicable to the seller or other transferor or to affect in any way a proceeding under sections five and five-a [§§ 23–2–5 and 23–2–5a] of this article.

(Emphasis added).

▉ This portion of the statute is also stated in mandatory terms. Thus, the Divi-sion must comply with *all* of the procedures outlined therein. Consequently, we further hold that in conducting a hearing pursuant to W. Va.Code § 23–2–15 (1995) (Repl.Vol. 1998), the Workers' Compensation Division must follow *all* of the procedures set forth in that section of the Code, which include, in part, (1) considering: (a) the exact nature of the default; (b) the amount owed to the division; (c) the solvency of the fund; (d) the financial condition of the buyer or other recipient; (e) the equities exhibited towards the fund by the buyer or other recipient during the acquisition process; (f) the potential economic impact upon the state and the specific geographic area in which the buyer or other recipient is to be or is located, if the acquisition were not to occur; and (g) whether the assets are purchased in an arms-length transaction; and (2) rendering its decision in writing with appropriate findings of fact and conclusions of law.

▉ Because these procedures are mandatory, they are a non-discretionary part of the administrative procedure for cases of this nature. It is well established that

" 'The general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act.' Syl. pt. 1, *Daurelle v. Traders Federal Savings & Loan Association*, 143 W.Va. 674, 104 S.E.2d 320 (1958)." Syl. Pt. 1, *Cowie v. Roberts*, 173 W.Va. 64, 312 S.E.2d 35 (1984).

Syl. pt. 10, *State ex rel. Miller v. Reed*, 203 W.Va. 673, 510 S.E.2d 507 (1998). *See also State ex rel. Bell Atlantic–West Virginia, Inc. v. Ranson*, 201 W.Va. 402, 409, 497 S.E.2d 755, 762 (1997) ("Under the exhaustion of remedies doctrine, a claim must be ' "cognizable in the first instance by an administrative agency *alone* [ ][and] judicial interference is withheld until the administrative process has run its course." ' *In re Long Distance Telecommunication Litigation*, 612 F.Supp. 892, 895 (D.C.Mich.1985), *aff'd in part, rev'd in part on other grounds*, 831 F.2d 627 (6th Cir.1987) (*quoting United*

*States v. Western Pacific RR Co.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956))." (Emphasis in original) (Additional citations omitted)). Because the Division's duty to fulfill the § 23–2–15 procedural requirements is mandatory, the administrative process is not exhausted and a case is not appealable to a circuit court until all of those procedures have been executed.

In the case *sub judice,* the Division failed to conduct the hearing requested by Expedited. Instead, the Division entered a final order adopting the findings and conclusions of the Administrative Law Judge who had applied the § 23–2–14(f) presumption to conclude that Expedited was a successor employer to TTP. The Division is an administrative agency. *See West Virginia State Bar v. Earley,* 144 W.Va. 504, 521, 109 S.E.2d 420, 432 (1959) ("The State Compensation Commissioner is not a judicial tribunal but an administrative agency which may properly be considered as an administrative tribunal of the government of this State. *Cole v. State Compensation Commissioner,* 121 W.Va. 111, 1 S.E.2d 877 [ (1939) ]; *Sledd v. State Compensation Commissioner,* 111 W.Va. 509, 163 S.E. 12, 80 A.L.R. 1424 [ (1932) ]; *Proffitt v. State Compensation Commissioner,* 108 W.Va. 438, 151 S.E. 307 [ (1930) ]; *Higgins v. Williams Pocahontas Coal Company,* 103 W.Va. 504, 138 S.E. 112 [ (1927) ]; *Liberty Mutual Insurance Company v. Jones,* 344 Mo. 932, 130 S.W.2d 945, 125 A.L.R. 1149 [ (1939) ]." (Additional citations omitted.)); W. Va.Code § 29A–1–2(a) (1982) (Repl.Vol.1998) (defining "agency" for purposes of Administrative Procedures Act as "any state board, commission, department, office or officer authorized by law to make rules or adjudicate contested cases, except those in the legislative or judicial branches"). As an administrative agency, the Division possesses only the authority granted to it by statute.

An administrative agency is but a creature of statute, and has no greater authority than conferred under the governing statutes. *See* Syl. Pt. 3, *Appalachian Regional Health Care, Inc. v. W.Va. Human Rights Comm'n,* 180 W.Va. 303, 376 S.E.2d 317 (1988); A. Neely, *Administrative Law in West Virginia* § 3.04, at 60 (1982).

*State ex rel. Hoover v. Berger,* 199 W.Va. 12, 16–17, 483 S.E.2d 12, 16–17 (1996). Because the Division failed to hold the mandatory hearing requested by Expedited, and failed to follow the mandatory procedural requirements related to that hearing, its final order was not in compliance with statutory requirements and the administrative procedure was not exhausted. In the absence of such a properly entered final order, the Circuit Court of Kanawha County was without jurisdiction to consider an appeal of this case. Due to the circuit court's lack of jurisdiction, this Court is similarly without jurisdiction to address the substantive issues raised in this appeal.[13] Therefore, this case is reversed and remanded to the Division with instructions to conduct a hearing in accordance with this opinion and in full compliance with W. Va.Code §§ 23–2–14(f) and 23–2–15.[14]

### IV.

### CONCLUSION

For the foregoing reasons, this case is reversed and remanded for additional proceedings not inconsistent with this opinion.

Reversed and remanded.

---

**13.** The Division asserted two substantive issues in this appeal. First, the Division argued that the circuit court erred in reversing the Division's conclusion that Expedited is a successor employer to TTP under W. Va.Code § 23–2–14. Second, the Division complained that the Circuit Court erred in failing to permit oral argument. Because we conclude that the circuit court was without jurisdiction to consider the Division's final order in this case, we do not reach these issues.

**14.** There are two methods by which a circuit court properly has jurisdiction over cases such as the one a bar. First, when the Division makes its decision based upon W. Va.Code § 23–2–14(b), rather than relying upon the presumption found in subsection 14(f), then the Division's final order is appealable to the circuit court under W. Va. Code §§ 23–2–17 (1993) (Repl.Vol.1998), and 29A–5–4 (1998) (Repl.Vol.1998). Second, when the Division relies on the § 23–2–14(b) presumption, the procedures outlined in this opinion must be followed before the Division may enter a final, appealable, order.